# EXHIBIT A

A296

**Exhibit A to Gerber Affirmation-**
**(ii) Final Award in In the Matter of Anna Pezhman v. Bloomingdale's**
**Inc., Case No. 01-21-00017-0504, dated May 17, 2022**
**[pp. A296 - A315]**

## AMERICAN ARBITRATION ASSOCIATION

### Employment Arbitration Tribunal

| | |
|---|---|
| In the Matter of the Arbitration between | Case No. 01-21-0017-0504 |
| Anna Pezhman, | |
| Claimant, | |
| v. | |
| Bloomingdale's, Inc., | |
| Respondent. | |

### FINAL AWARD

THEODORE K. CHENG, Arbitrator                                      May 17, 2022

I, THE UNDERSIGNED ARBITRATOR, having been appointed to hear this case under the Employment Arbitration Rules of the American Arbitration Association ("AAA") (effective November 1, 2009); having been duly designated in accordance with Solutions InSTORE ("Solutions"), dated June 1, 2014, and entered into between Claimant Anna Pezhman ("Ms. Pezhman"), appearing *pro se,* and Respondent Bloomingdale's, Inc. ("Bloomingdale's"), appearing *pro se* through Rochelle O'Day, Director, Colleague Advisory of Bloomingdale's, which Ms. Pezhman acknowledged when she began her employment with Bloomingdale's on March 17, 2019; having been duly sworn; and having heard the proofs and allegations of the parties, do hereby **DECIDE AND AWARD** as hereinafter set forth.

//

//

//

*Discussion*

## I.    Relevant Background

On March 17, 2019, Bloomingdale's hired Ms. Pezhman at its SoHo store location.  On October 21, 2021, Bloomingdale's terminated Ms. Pezhman's employment with the company due to a violation of company policy.  Four days later, she filed a Demand for Arbitration with the AAA.  In that one-page document, she sought $25 million dollars in damages in connection with the following claims: (1) defamation per quod; (2) intentional infliction of emotional distress; and (3) retaliation.  The Demand also noted that she was seeking to interpose statutorily protected rights and was also seeking reimbursement for arbitration costs, interest, punitive/exemplary damages, and declaratory/injunctive relief.

I was appointed shortly thereafter and held a preliminary hearing in this matter on December 9, 2021.  During the hearing, I asked a number of questions regarding the nature and scope of the claims and the relief Ms. Pezhman was seeking, and, after a discussion with the parties, I ordered Ms. Pezhman to submit a narrative setting forth the factual background pertaining to her dispute with Bloomingdale's, the applicable timeframe and dates, the specific legal claims she is bringing (including identifying any applicable statutory provisions), and the relief she is seeking.  I also afforded Bloomingdale's the opportunity to submit a responsive pleading.  *See* Procedural Order No. 1, ¶¶ 3(a), (b).

On December 10, 2021, Ms. Pezhman submitted an MS Word document, the file for which was labeled "Statement of facts for Dec 10."  This document did not comply with my Order because it did not set forth (1) the applicable dates and timeframes for each of the incidents she described (to the best of her knowledge and recollection); (2) the identification of any statutory provisions under which she was purporting to bring any claims in this arbitration proceeding; and

A298

(3) the specific relief she was seeking. Thus, I afforded Ms. Pezhman another opportunity to submit her narrative.

On December 14, 2021, Ms. Pezhman submitted another MS Word document, the file for which was labeled "Revised Statement of Facts dated Dec 14." The text of the document itself is entitled "Summary of Facts and Applicable Law." In this document, which I accepted as the operative pleading in this proceeding, Ms. Pezhman sought damages in the amount of $5 million dollars and interposed claims for (1) retaliation under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq*.; (2) retaliation under the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq*.; (3) defamation per quod under New York common law; (4) defamation per se under New York common law; (5) retaliation under the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution; (6) racial discrimination under the NYSHRL; and (7) racial discrimination under the NYCHRL. Although Mr. Pezhman continued to seek emotional distress damages as part of the relief being sought in this proceeding, notably absent in this pleading was any claim for an intentional infliction of emotional distress. On December 21, 2021, Bloomingdale's submitted an Answer, which denied the claims and interposed various affirmative defenses.

During the preliminary hearing, both parties also expressed an interest in possibly engaging in dispositive motion practice, which is permitted under Solutions InSTORE, the company's early dispute resolution program. *See* Solutions at 13, Art. 11(d) ("In addition, a party may submit one (1) brief in support of a dispositive motion, the opposing party may submit one(1) [*sic*] brief in opposition of such dispositive motion, and the moving party may submit one (1) reply brief in response to any brief in opposition to the dispositive motion. These briefs shall be typed and shall be limited in length to twenty (20) double-spaced pages., [*sic*] except any reply brief shall be

limited in length to 10 pages."). By agreement of the parties, a briefing schedule was set down, which included page limits in excess of those provided under Solutions. *See* Procedural Order No. 1, ¶ 5.

Moreover, I informed the parties that, to the extent that such a motion seeks a complete dismissal of any claim or defense in this proceeding, I would construe the motion as one seeking the issuance of either a partial final award or a final award. If all claims are dismissed in their entirety, the decision I issue would effectively terminate this proceeding and have the same effect as a final award. Such a termination would also thereby terminate my appointment on this case. *See id.*

Thereafter, on April 1, 2022, Bloomingdale's submitted its opening dispositive motion papers; Ms. Pezhman did not submit any opening motion papers. Between April 21, 2022 and April 25, 2022, Ms. Pezhman submitted her opposition papers to the motion. On April 26, 2022, before any reply papers from Bloomingdale's had been submitted, Ms. Pezhman sent an e-mail indicating that she "anticipate[d] wanting a sur reply." The next day, through the AAA Case Manager, I denied that request without prejudice to renew because, among other things, the request was premature (in that Bloomingdale's had not yet submitted its reply) and also did not specify any grounds for a sur-reply, especially in light of the briefing schedule for this motion having already been set down four months earlier.

On April 29, 2022, Bloomingdale's submitted its reply papers in further support of its motion. Barely 30 minutes later, Ms. Pezhman sent an e-mail requesting leave to submit a sur-reply. On May 2, 2022, through the AAA Case Manager, I denied the request because it failed to provide a detailed explication of the reasons why a sur-reply was necessary and justified. However, I afforded Ms. Pezhman one last opportunity to make her reasons clear to me by

permitting her to renew her application yet again. A few hours later, Ms. Pezhman renewed her

application, setting forth her contentions, to which Bloomingdale's responded later that same day.

On May 6, 2022, the AAA Case Manager sent the following communication to the parties

on my behalf:

> I am in receipt of Claimant's renewed request to file a sur-reply, to
> which Respondent has objected. The basis for Claimant's renewed
> request is that Respondent has allegedly raised new arguments in its
> reply, which, if true, would be a potential ground for permitting the
> submission of a sur-reply. Specifically, Claimant identifies two
> arguments that Respondent makes in its reply, namely, (1) the issue
> of who the "engineers are in terms of the suspensions and
> dismissals" and (2) whether Claimant only communicated minimal
> information to certain actors. After reviewing both Claimant's
> opposition brief and Respondent's reply, it is plain that, in both of
> these instances, all Respondent has done in its reply is to respond to
> the substance of those arguments that were, in fact, first raised by
> Claimant in her opposition brief. Thus, Respondent, as the moving
> party, has the right to have the last word on this issue. Accordingly,
> Claimant's request to submit a sur-reply relating to these two issues
> is **DENIED**.
>
> Claimant also contends that she can now provide copies of Exhibits
> V and W, which Respondent claims were not submitted with her
> opposition papers. It is indeed true that those two exhibits were not
> submitted with Claimant's opposition papers, and, after reviewing
> the opposition brief, it is clear that she meant to do so, as she cites
> to them on pages 11 and 21 of her brief. However, Claimant
> provides no explanation for neglecting to submit these exhibits in
> the first instance, aside from (perhaps) laying blame on a Staples
> employee. Accordingly, assuming Claimant's request encompasses
> a request for leave to belatedly submit these exhibits, that request is
> also **DENIED**.

Shortly after receiving my decision, Ms. Pezhman sent an e-mail requesting

reconsideration of my rulings. After affording Respondent an opportunity to respond, on May 9,

2022, the AAA Case Manager sent the following communication to the parties on my behalf:

> I am in receipt of an email sent by Claimant on May 6, 2022, in
> which she seeks reconsideration of my May 6th ruling denying her
> request to submit a sur-reply in connection with Respondent's
> pending dispositive motion. On May 9, 2022, Respondent

submitted a response opposing Claimant's reconsideration request. After having reviewed the parties' respective submissions, and for substantially the same reasons articulated in my prior ruling, Claimant's request for reconsideration is **DENIED**.

Additionally, after now having fully reviewed the parties' respective submissions in connection with Respondent's pending dispositive motion, I write separately to inform the parties that I am not in need of any further submissions, and that oral argument on the motion is unnecessary. *See* Procedural Order No. 1, ¶ 5. Accordingly, there shall be no further briefing or other submissions in connection with this motion, and I will proceed to issue a decision on the motion.

## II.    The Motion for a Summary Award

As is the case for a summary judgment motion, Bloomingdale's is entitled to a summary award when there is no genuine issue of material fact and the undisputed facts warrant an award in its favor as a matter of law. *Cf.* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). If the moving party has carried its burden, the nonmoving party must then go beyond its original pleadings and designate specific facts showing that there remains a genuine issue of material fact that needs to be resolved by an evidentiary hearing. *Cf.* Fed. R. Civ. P. 56(c). This additional showing can be by affidavits, depositions, answers to interrogatories, or the admissions on file. *Cf. id.; Anderson*, 477 U.S. at 257. An issue is "genuine" if the evidence is sufficient to persuade a reasonable factfinder to return an award for the nonmoving party. *See Anderson*, 477 U.S. at 248.

Should Bloomingdale's identify an absence of proof on Ms. Pezhman's part, she must "designate specific facts showing that there is a genuine issue for trial" and offer "concrete evidence" from which a reasonable finder of fact could render an award in her favor. *Parker v. Sony Pictures Entm't, Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (internal quotations and citation omitted); *accord Anderson*, 477 U.S. at 256. Although all reasonable inferences from the

evidentiary record must be drawn in favor of Ms. Pezhman, to defeat the motion, she cannot rely on mere allegations or denials; rather, she must identify specific items in the record evidence.

Certainly, arbitrators are more lenient towards *pro se* litigants. Here, both parties are representing themselves. Moreover, even though Ms. Pezhman is a licensed attorney and cites and relies upon decisional authority in her motion papers, an arbitrator should nonetheless "read the pleadings . . . liberally and interpret them to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotations and citation omitted). However, if the evidence does not provide adequate proof of unlawful actions, a summary award will be granted. *Cf., e.g., Lyerly v. Koenigsmann*, No. 04 Civ. 3904, 2006 U.S. Dist. LEXIS 49124, at *2 (S.D.N.Y. July 17, 2006) ("[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment."; internal quotations and citation omitted). Moreover, the role of an arbitrator "in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Rather, the party contesting the issuance of a summary award has the duty "to highlight which factual averments are in conflict as well as what record evidence there is to confirm the dispute." *Id.* at 922; *accord Hamptons Locations, Inc. v. Rubens*, No. 01-CV-5477 (DRH)(WDW), 2006 U.S. Dist. LEXIS 33450, at *5 (E.D.N.Y. May 25, 2006) ("The Court is not required to scour the record or the parties' various submissions to piece together appropriate arguments."). In a motion for a summary award, the arbitrator's task is only to decide, based upon the evidentiary record that accompanies the moving and opposing filings of the parties, whether there really is any material dispute of fact that still requires a hearing. *See Waldridge*, 24 F.3d at 920 (citing *Anderson*, 477 U.S. at 249 and 10 Wright & Miller, Federal Practice & Procedure § 2712 (3d ed. 1998)).

In its motion, Bloomingdale's seeks a summary award on all of Ms. Pezhman's claims interposed in this proceeding. I discuss each claim in turn below.

### A.    Claim for Retaliation Under the Equal Protection Clause

Initially, in a footnote, Bloomingdale's contends that it "will not address Claimant's allegations of Retaliation under the Equal Protection Clause of 14th [*sic*] as Respondent is not a State nor the federal government." Resp. Br. at 1 n.2. Although it is not entirely clear that Bloomingdale's is seeking a summary award on this claim as well, the caption of the motion – one seeking "summary judgment," and not a partial summary award – suggests that Bloomingdale's does, in fact, seek dismissal of this claim.

In any event, the fundamental point made by Bloomingdale's is correct, namely, that a constitutional claim can only be interposed against a state actor. *See, e.g., Cherry v. LeDeoni*, No. 99 CV 6860 (SJ), 2002 U.S. Dist. LEXIS 6701, at *22 (E.D.N.Y. Apr. 8, 2002) ("The First and Fifth Amendments only restrict actions by the federal government and the Fourteenth Amendment only restrains the actions of state actors."; internal citation omitted); *see also Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) ("The equal protection clause directs state actors to treat similarly situated people alike."; internal citations omitted). Here, Ms. Pezhman does not even allege in her Summary of Facts and Applicable Law that Bloomingdale's is a state actor. *See* Summ. of Facts and App. Law at 6. Common knowledge and publicly available documents also confirm that Bloomingdale's is a private corporation with no ostensible connection or relationship to a state authority. *See, e.g.*, Macy's 2021 Annual Report at 4 ("The Company is a corporation organized under the laws of the State of Delaware in 1985. . . . The Company's operations are conducted through Macy's, Macy's Backstage, Market by Macy's, Bloomingdale's, Bloomingdale's The Outlet, Bloomies, and bluemercury."), available at

https://www.macysinc.com/investors/sec-filings; Bloomingdale's (Our History), available at https://www.bloomingdales.com/b/about-us/history/.

Therefore, because I conclude that Bloomingdale's is not a state actor, the branch of the motion for a summary award on the claim for retaliation under the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution is **GRANTED**, and that claim will be **DISMISSED WITH PREJUDICE**.

**B.     Claim for Intentional Infliction of Emotional Distress**

Bloomingdale's next contends that Ms. Pezhman has not provided any evidence to support her claim for intentional infliction of emotional distress. *See* Resp. Br. at 15-17. As part of its argument, Bloomingdale's argues that Ms. Pezhman has failed to establish the elements of such a claim, but then points to an interrogatory seeking information regarding the emotional distress damages that Ms. Pezhman may be seeking in this proceeding. *See id.* at 16.

Notwithstanding the disconnect between these two points, by virtue of her Summary of Facts and Applicable Law, I conclude that Ms. Pezhman has withdrawn her prior claim for intentional infliction of emotional distress that she had initially interposed in her Demand for Arbitration. Therefore, because there is no claim for intentional infliction of emotional distress that has been interposed in this proceeding, the branch of the motion for a summary award on the claim for intentional infliction of emotional distress is **DENIED AS MOOT**.

**C.     Claims for Defamation Per Quod and Defamation Per Se**

Bloomingdale's also contends that the defamation claims should be dismissed because Ms. Pezhman has failed to show that (a) the alleged complaints received from customers were false, and that (b) Bloomingdale's publicly published the Formal and Final Warnings delivered to Ms. Pezhman to a third party. *See* Resp. Br. at 17-18.

**A305**

Under New York law, defamation is "the making of a false statement which tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society." *Foster v. Churchill*, 87 N.Y.2d 744, 751 (1996) (internal quotations and citation omitted). "Generally speaking, slander is defamatory matter addressed to the ear while libel is defamatory matter addressed to the eye. Libel is broken down into two discrete forms – libel per se, where the defamatory statement appears on the face of the communication, and libel per quod, where no defamatory statement is present on the face of the communication but a defamatory import arises through reference to facts extrinsic to the communication." *Ava v. NYP Holdings, Inc.*, 64 A.D.3d 407, 411-12 (1st Dep't 2009) (internal citations omitted). To state a claim for defamation, "a plaintiff must allege (1) a written [or spoken] defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Kesner v. Dow Jones & Co.*, 515 F. Supp. 3d 149, 169-170 (S.D.N.Y. 2021) (quoting *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019)); *accord Three Amigos SJL Rest., Inc. v CBS News, Inc.*, No. 152184/2012, 2013 N.Y. Misc. LEXIS 2143, at *9 (N.Y. Co. Mar. 19, 2013) ("The elements of a defamation claim are a false statement concerning the plaintiff, published without privilege or authorization to a third party, constituting fault, and that causes either special harm or constitutes defamation per se."; internal citations omitted).

Here, the defamation claims arise from statements made by customers who apparently accused Ms. Pezhman of racially profiling them. *See* Resp. Br., Ex. U thereto at 1 (Ms. Pezhman's response to Interrogatory No. 4). To be sure, Ms. Pezhman disputes the veracity of these statements, and these accusations ultimately led to disciplinary actions being taken against Ms. Pezhman by Bloomingdale's. But more importantly, nowhere in Ms. Pezhman's response to the

**A306**

interrogatory, her Summary of Facts and Applicable Law, or her opposition brief does she set forth any facts or evidence from which it can be reasonably inferred that these statements were ever published to a third party by Bloomingdale's. *See, e.g., id.*; Summ. of Facts and App. Law at 3-5; Opp. Br. at 19-23.

Therefore, because Ms. Pezhman has failed to satisfy her burden regarding the third-party publication element of her defamation claims, the branch of the motion for a summary award on the claims for defamation per quod and defamation per se is **GRANTED**, and those claims will be **DISMISSED WITH PREJUDICE**.

### D.  Claims for Racial Discrimination Under the NYSHRL and the NYCHRL

Bloomingdale's further contends that the racial discrimination claims should be dismissed because Ms. Pezhman cannot establish a *prima face* case of race discrimination because "she cannot show that she was doing her job well enough to meet the Company's expectations (qualified for the job), nor can she provide any evidence that similarly situated non-White employees were treated better (circumstances giving rise to an inference of discrimination)." *See* Resp. Br. at 18-23.

To establish a *prima facie* claim of discrimination under the NYSHRL, a claimant must establish that:  (a) she belonged to a protected class; (b) she was qualified for the position she held; (c) she suffered an adverse employment action; and (d) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *See Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003).  The NYCHRL employs a similar, but different, standard, requiring a claimant to demonstrate that:  (a) she was a member of a protected class; (b) she was qualified for the position; and (c) she was treated differently from others because of her protected

status in a way that was more than petty slights and trivial inconveniences. *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109-11 (2d Cir. 2013).

If Ms. Pezhman meets her initial burden to establish her *prima facie* case, the burden shifts to Bloomingdale's to articulate a legitimate, non-discriminatory reason for its actions, a burden that is not substantial. *See Rosenberg v. Chesapeake Pharm. and Health Care Packaging*, 888 F. Supp. 2d 302, 309 (E.D.N.Y. 2012); *Nakis v. Potter*, 422 F. Supp. 2d 398, 423-24 (S.D.N.Y. 2006). The burden then shifts back to Ms. Pezhman to demonstrate that the reason provided by Bloomingdale's is not the true reason and is being used as a pretext to hide a discriminatory motivation. *See Woodman v. WWOR-TV, Inc.,* 411 F.3d 69, 76 (2d Cir. 2005). Ms. Pezhman's task at this stage must comprise more than conclusory allegations of discrimination. *See Forsyth v. Fed'n Empl. & Guidance Serv.*, 409 F.3d 565, 573 (2d Cir. 2005).

Here, in support of its motion, Bloomingdale's has submitted evidence to establish that Ms. Pezhman was not meeting the expectations of her role at the company, and thus, was not qualified to continue holding the position she held when she was terminated. *See, e.g.*, Resp. Br., Ex. L thereto (July 11, 2021 Formal Warning); *id.*, Ex. N thereto (July 11, 2021 Final Warning). Moreover, in order to demonstrate an inference of discrimination, Ms. Pezhman would have to present evidence of discriminatory animus through conduct that has a "tendency to show that the decision-maker was motivated by assumptions or attitudes relating to the protected class." *Galimore v. City of Univ. of N.Y. Bronx Cmty. Coll.*, 641 F. Supp. 2d 269, 284 (S.D.N.Y. 2009) (internal quotations and citation omitted). But in response to an interrogatory, Ms. Pezhman essentially set forth that she was discriminated against on the basis of her race when Bloomingdale's held her accountable for her behavior when a store customer lodged a complaint that Ms. Pezhman had racially profiled the customer. *See* Resp. Br., Ex. U thereto at 2-3 (Ms.

**A308**

Pezhman's response to Interrogatory No. 8). Irrespective of the veracity of the customer's complaint, the actions taken by Bloomingdale's in response to the complaint do not give rise to an inference of discriminatory intent, especially where Ms. Pezhman fails to identify a similarly situated non-Caucasian co-worker who was treated differently or better under similar circumstances. Indeed, Bloomingdale's has submitted evidence showing that, from October 2020 (one year before her termination) to the present, Ms. Pezhman is the only Caucasian employee who was terminated due to "Violation of Company Policy" at the Bloomingdale's SoHo location. *See, e.g., id.*, Ex. V thereto (SoHo Violation of Company Policy Terminations, October 2020 through April 1, 2022); Ex. W thereto (All SoHo Terminations, October 2020 through April 1, 2022).

Even assuming Ms. Pezhman could establish a *prima facie* case of race discrimination, Bloomingdale's has more than met its burden to articulate a legitimate, non-discriminatory basis for both suspending Ms. Pezhman and ultimately terminating her employment. *Cf. e.g., Avillan v. Potter*, No. 04 Civ. 9019 (PKC) (FM), 2006 U.S. Dist. LEXIS 80062, at *64 (S.D.N.Y. Nov. 1, 2006) ("In discrimination cases, including those premised on retaliation, courts are decidedly not interested in the truth of the allegations against plaintiff. [They] are interested in what *motivated* the employer; the factual validity of the underlying imputation against the employee is not at issue."; internal quotations and citation omitted); *Sarmiento v. Queens Coll. CUNY*, 386 F. Supp. 2d 93, 101 (E.D.N.Y. 2005) ("Title VII does not obligate Defendant to be correct in their assessment of his status as an expert, it only obligates Defendant to base their actions on non-discriminatory considerations."; citation omitted).

In opposing the motion, Ms. Pezhman relies on unsupported allegations that the company or the individuals involved ultimately made the decision to terminate her employment possessed

or exhibited any discriminatory animus towards her. Thus, she has failed to raise a triable issue of fact as to whether the conduct involved was a pretext to mask a discriminatory intent or was, in part, motivated by discrimination. Rather than responding specifically to the above contentions made by Bloomingdale's, Ms. Pezhman advances her own narrative version of the events, either unsupported by any evidence or simply citing to hundreds of pages of material (*e.g.*, entire deposition transcripts without citations to specific pages and/or line numbers). In doing so, she fundamentally misunderstands both the purpose of an opposition brief and her burden on a motion for a summary award.

The purpose of an opposition brief is to respond specifically to the contentions being advanced by the moving party. It is not, as Ms. Pezhman has done, an opportunity for the non-moving party to present her side of the story or some competing factual narrative; that is the purpose of an evidentiary hearing. In order to be able to have that opportunity at the evidentiary hearing, Ms. Pezhman must first demonstrate that her claims can survive the motion for a summary award. Under the standards for such a motion, Ms. Pezhman has the burden to "designate specific facts showing that there is a genuine issue for trial" and offer "concrete evidence" from which a reasonable finder of fact could render an award in her favor. She cannot rely on mere allegations or denials; rather, she must identify specific items in the record evidence. She has failed to do so here, in that nowhere does Ms. Pezhman identify the specific issues on which there is a genuine dispute requiring a hearing, and she fails to point to specific, concrete evidence.

Therefore, because Ms. Pezhman has failed to satisfy her burden to demonstrate that the articulated basis for suspending her and ultimately terminating her employment were either not true or were used as a pretext to hide a discriminatory intent, the branch of the motion for a

summary award on the claims for racial discrimination under the NYSHRL and the NYCHRL is **GRANTED**, and those claims will be **DISMISSED WITH PREJUDICE**.

### E.    <u>Claims for Retaliation Under the NYSHRL and the NYCHRL</u>

Finally, Bloomingdale's contends that the retaliation claims should be dismissed because Ms. Pezhman has failed to provide any evidence of retaliation. *See* Resp. Br. at 23-25.

To establish a claim for retaliation under the NYSHRL, a plaintiff bears the initial burden of establishing a *prima facie* case by showing: "(1) she has engaged in protected activity, (2) her employer was aware that she participated in such activity, (3) she suffered an adverse employment action based upon her activity, and (4) there is a causal connection between the protected activity and the adverse action." *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 313 (2004). A "[c]ausal connection can be established by evidencing any of the following: (1) close temporal proximity between the protected activity and the adverse employment action; (2) evidence that other similarly-situated employees were treated differently than the plaintiff; or (3) with direct proof of retaliatory animus." *Alfano v. Starbucks Corp.*, No. 8215/10, 2012 N.Y. Misc. LEXIS 2746, at *10-11 (N.Y. Co. June 4, 2012) (citation omitted). "Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Id.* at *11 (internal quotations and citation omitted). "If [the] plaintiff satisfies this burden, [the] defendant must set forth a legitimate, non-retaliatory reason for the adverse employment action. If [the] defendant does so, [the] plaintiff can prevail only if he can show that defendant's explanation is merely a pretext for retaliation." *Valentin v. Fox Bus. Network*, No. 156352/2014, 2016 N.Y. Misc. LEXIS 699, at *18-19 (N.Y. Co. Mar. 3, 2016).

**A311**

Here, in support of its motion, Bloomingdale's points to Ms. Pezhman's response to an interrogatory, in which she sets forth that Joanna Pedroza suspended her after receiving her Step 2 complaint. *See* Resp. Br., Ex. U thereto at 2 (Ms. Pezhman's response to Interrogatory No. 6). A Step 2 complaint is a request for review of an employment-related grievance by the Office of Senior Human Resources Management. *See* Solutions at 3 ("If the Employee is not satisfied with the result of a [*sic*] Open Door (Step 1), the Employee may go to Step 2, by filing a written request for review with the Manager of Step 2 claims within thirty (30) days of the Step 1 decision."). Because Ms. Pezhman's Step 2 complaint pertained to her allegations for racial discrimination, and because she forwarded the complaint to Ms. Pedroza, the Human Resources Business Partner at the company, she was plainly engaged in a protected activity under both the NYSHRL and the NYCHRL about which the company was aware. *See* Resp. Br., Ex. H thereto (E-mail from A. Pezhman to J. Pedroza, forwarding Step 2 complaint).

However, as demonstrated by the evidence submitted by Bloomingdale's, the true sequence of events is that Ms. Pezhman submitted her Step 2 complaint *after* she had already been told by Ms. Pedroza not to return to the store. Specifically:

- Ms. Pedroza and Ms. Pezhman spoke over the telephone on June 4, 2021 at approximately 6:50 pm. *See id.*, Ex. G thereto at 2.

- At 7:00 pm, Ms. Pezhman sent Ms. Pedroza an e-mail, in which she stated, "You are retaliating against a claim of harrassment [*sic*]," but otherwise provided no other information, context, or details. *Id.* at 3.

- At 7:10 pm, Ms. Pedroza replied to Ms. Pezhman's e-mail, stating "During our phone call about 20 minutes ago, I explained that I now have more information regarding your behavior today and will need to conduct an investigation. I also

asked that you not come to the store until I reach out to you to schedule a time to discuss your side of the story." *Id.* at 2.

- Additional e-mail communications took place between Ms. Pedroza and Ms. Pezhman over the next two hours. At 9:01 pm, Ms. Pezhman sent an e-mail to Ms. Pedroza, stating, "What do you mean my conduct? I urge you to call Barbara because you did this once before. You realized you were retaliating against a claim of harassment and you tried to find a pretext and an investgation [*sic*] was launched and Barbara backed off. If you want to conduct this investigation as such then by all means. I will forward you the complaint I sent to central." *Id.* at 1.

- It was over an hour later, at 10:11 pm, that Ms. Pezhman submitted an e-mail to the designated Step 2 complaint inbox (step2claim@macys.com) comprising her Step 2 complaint. She forwarded that e-mail to Ms. Pedroza at 10:13 pm. *See id.*, Ex. H thereto.

Thus, because the sequence of events is completely opposite to, and, thus, undermines, the allegations of temporal proximity in Ms. Pezhman's interrogatory response, she has failed to demonstrate any causal connection between her engaging in a protected activity and the directive from Ms. Pedroza not to return to the store until a time could be scheduled to discuss her "side of the story" (*i.e.*, the suspension).

Moreover, although Ms. Pezhman refers in her 9:01 pm e-mail to some alleged complaint she submitted to a "Barbara," *see id.*, Ex. G thereto at 1, she does not provide any evidence demonstrating a causal connection, let alone any temporal proximity, between that alleged complaint and her suspension on June 4, 2021. Finally, to the extent that Ms. Pezhman also stated in her interrogatory response that Ms. Pedroza, Courtney Saavedra, Laura Saio, Ji Young Suk, and

Anita Watkins engaged in retaliation by terminating her employment at the company, there is insufficient evidence in the record from which I could conclude that there exists a causal connection between her alleged complaints of discrimination and campaign of harassment and the decision to terminate her employment. Finally, even assuming Ms. Pezhman could establish a *prima facie* case of retaliation, as noted above, Bloomingdale's has more than met its burden to articulate a legitimate, non-discriminatory basis for both suspending Ms. Pezhman and ultimately terminating her employment.

In opposing the motion, again, Ms. Pezhman relies on unsupported allegations that the company or the individuals involved retaliated against her. Specifically, nowhere in her opposition brief does she provide a response to the inconsistency between her interrogatory response and the e-mails in question. To defeat the motion for a summary award, Ms. Pezhman must offer concrete particulars raising a genuine issue of material fact evidencing retaliation. She may not rely on her mere allegations; rather, she must specifically point to evidence that supports those allegations, and she has not done so here. Moreover, she has failed to raise a triable issue of fact as to whether the conduct involved was merely a pretext for retaliation. As with her discrimination claim, Ms. Pezhman fails to rebut the record evidence that any adverse action taken against her was justified by the legitimate, nondiscriminatory reasons already described.

Therefore, because Ms. Pezhman has failed to satisfy her burden of proof, the branch of the motion for a summary award on the claims for retaliation under the NYSHRL and the NYCHRL is **GRANTED**, and those claims will be **DISMISSED WITH PREJUDICE**.

//

//

//

*Relief Awarded*

For the reasons set forth above, I **AWARD** as follows:

1.      The dispositive motion is **GRANTED** in its entirety.  Specifically, the following claims are all **DISMISSED WITH PREJUDICE**:

        a.      claim for retaliation under the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution;

        b.      claim for defamation per quod under New York common law;

        c.      claim for defamation per se under New York common law;

        d.      claim for racial discrimination under the NYSHRL;

        e.      claim for racial discrimination under the NYCHRL;

        f.      claim for retaliation under the NYSHRL; and

        g.      claim for retaliation under the NYCHRL.

2.      To the extent that the dispositive motion seeks to dismiss any claim for intentional infliction of emotional distress, because such a claim has not been interposed in this proceeding, the motion is **DENIED AS MOOT**.

3.      The administrative fees of the AAA, totaling $2,950.00, along with the compensation of the arbitrator, totaling $24,700.00, are to be borne as incurred.

4.      All remaining case management dates are hereby **VACATED**, including the previously scheduled evidentiary hearing on June 28-30, 2022.

5.      This is the Final Award in this arbitration.  It is effective immediately, without the necessity of further hearing and may be confirmed in any court having jurisdiction.  This Final Award is in full and complete settlement and satisfaction of any and all claims, counterclaims,

A315

defenses, and set-offs properly submitted to the jurisdiction of this arbitration.   Any claim, counterclaim, defense, or set-off not specifically granted or sustained herein is hereby denied.

Dated: May 17, 2022
      New York, New York

_____
THEODORE K. CHENG
ARBITRATOR

     I, Theodore K. Cheng, do hereby affirm upon my oath as arbitrator that I am the individual described in and who executed this instrument, which is my Final Award.

Dated: May 17, 2022
      New York, New York

_____
THEODORE K. CHENG
ARBITRATOR