UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANNA PEZHMAN,

Plaintiff,

v.

AMERICAN ARBITRATION ASSOCIATION and BLOOMINGDALE'S, INC.,

Defendants.

25-CV-3946 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Anna Pezhman, a licensed attorney proceeding *pro se*, brings this action against her former employer, Bloomingdale's, Inc. ("Bloomingdale's"), and the American Arbitration Association ("AAA"), following an arbitration of claims arising from her employment with Bloomingdale's. Plaintiff alleges, among other things, that the arbitration was tainted by an undisclosed "illicit relationship" and related *ex parte* communications between Bloomingdale's and the arbitrator, and that AAA thereafter failed to investigate her concerns about that alleged misconduct. Both Defendants now move to dismiss the Amended Complaint. For the reasons that follow, both motions are granted and this action is dismissed.

## BACKGROUND

The Court draws the following facts from the Amended Complaint, accepting its well-pleaded factual allegations as true for purposes of resolving the pending motions. *Lynch v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020).[1] The Court also takes judicial notice of the

[1] All quotations omit internal quotation marks, alterations, and citations unless otherwise noted.

arbitration award and the state-court decisions affirming the award, not for the truth of the matters asserted therein, but merely to establish the fact of such litigation. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).[2]

In 2017, Bloomingdale's hired Plaintiff as a stylist at its SoHo store in Manhattan. Dkt. 32-3 (Am. Compl.) ¶ 1. During her time in that position, Plaintiff purportedly performed well, receiving "accolades, peer praise," and a raise after being recognized as a "top seller." *Id.* Plaintiff's relationship with Bloomingdale's deteriorated after an incident in which two customers "verbally attack[ed] an Asian coworker" and, when Plaintiff tried to calm them down, called her a "Karen." *Id.* ¶ 2. After Plaintiff filed a grievance asserting that the store was an unsafe working environment, she alleges that a group of managers "instituted a campaign of harassment" against her—involving multiple suspensions, disciplinary hearings, and encouragement of customer complaints accusing her of "racial profiling"—that culminated in her termination. *Id.* ¶¶ 2–3.

Following her termination, Plaintiff filed a demand for arbitration against Bloomingdale's pursuant to the parties' agreement to resolve employment disputes through arbitration. *Id.* ¶¶ 5, 11, 51. The arbitration was to be administered by AAA and governed by AAA's Employment Arbitration Rules and Mediation Procedures (the "AAA Rules"). *Id.*; Dkt. 8, Hecht Decl., Ex. B ("AAA Rules"); *see also* Dkt. 32-4, Gerber Decl., Ex. B ("Final Award") at 1. The parties selected Theodore K. Cheng to serve as the arbitrator (the "Arbitrator"), Am. Compl. ¶ 5, and Rochelle O'Day, a Director of Colleague Advisory at Bloomingdale's, represented Bloomingdale's, *see* Final Award at 1.

---

[2] The Court further takes judicial notice of AAA's Employment Arbitration Rules and Mediation Procedures, Dkt. 8-3, Hecht Decl., Ex. B ("AAA Rules"), as courts routinely take judicial notice of arbitral sponsor rules because they are "not subject to reasonable dispute" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Klein v. ATP Flight Sch., LLP*, No. 14-CV-1522, 2014 WL 3013294, at *10 n.6 (E.D.N.Y. July 3, 2014) (collecting cases from various circuits addressing judicial notice of arbitral sponsor rules at the motion-to-dismiss stage).

In her demand for arbitration, Plaintiff asserted claims for retaliation and racial discrimination under the New York State and New York City Human Rights Laws, retaliation in violation of the Equal Protection Clause, and defamation under New York common law. *See* Final Award at 3. Bloomingdale's denied liability and moved for a summary award for all claims. *Id.* at 3, 8. On May 17, 2022, Arbitrator Cheng issued a 20-page Final Award granting the motion and dismissing all of Plaintiff's claims with prejudice. Am. Compl. ¶ 14; *see* Final Award at 19.

Shortly thereafter, Plaintiff filed suit against Bloomingdale's in New York State Supreme Court seeking to vacate the Final Award. Am. Compl. ¶ 15; *see* Dkt. 32-5, Gerber Decl., Ex. C ("Supreme Court Order"). Specifically, Plaintiff alleged that Arbitrator Cheng was "not impartial in rendering his decision," such that the Final Award constituted "an abuse of discretion." Supreme Court Order at 4. According to Plaintiff, Arbitrator Cheng "did not grant her an opportunity to present her case" and "demonstrated bias" once she represented herself as an attorney. *Id.* Bloomingdale's cross-moved to confirm the Final Award. *Id.*

On September 30, 2022, the New York Supreme Court denied Plaintiff's petition to vacate and granted Bloomingdale's cross-motion to confirm. *Id.* at 5–6. In doing so, the court determined that Arbitrator Cheng had "thoughtfully considered each of [Plaintiff's] claims" and given her "ample opportunity to make her case," including "several opportunities to correct or restate various submissions when [Plaintiff] ignored deadlines and instructions." *Id.* at 5. The court further found that "[t]here [wa]s absolutely no evidence of bias against [Plaintiff]." *Id.* Accordingly, it concluded that Arbitrator Cheng's decision to dismiss Plaintiff's claims was "rational and justified." *Id.*

Plaintiff appealed the Supreme Court's decision to the First Department of the New York State Appellate Division ("First Department"), which unanimously affirmed. Dkt. 32-6, Gerber

Decl., Ex. D ("First Department Order"). The First Department explained that Arbitrator Cheng's "detailed [and] well-reasoned award" undermined any suggestion that he had acted in "manifest disregard of the law." *Id.* at 1. It also rejected Plaintiff's remaining objections as being "unsupported by the record," finding no evidence that she was prejudiced by Arbitrator Cheng's decision and that her claim of bias was both waived by her "participati[on] in the arbitration" and, in any event, entirely speculative. *Id.* at 2. Plaintiff subsequently sought leave to appeal to the New York State Court of Appeals, which denied her motion. Am. Compl. ¶ 15; *see* Dkt. 32-5, Gerber Decl., Ex. E ("Court of Appeals Order").

On May 12, 2025, Plaintiff commenced this action after an unidentified "individual who had worked with Bloomingdales" allegedly told her of an "illicit relationship" between Arbitrator Cheng and Bloomingdale's. Am. Compl. ¶ 16. She asserts, "[u]pon information and belief," that Arbitrator Cheng and O'Day—Bloomingdale's representative during the arbitration—engaged in "*ex-parte* communications" that "resulted in the dismissal of her claims." *Id.* ¶ 27. Plaintiff does not allege, however, the nature or content of the purported communications between O'Day and Arbitrator Cheng.

After receiving the "tip," Plaintiff contacted Tracy Frisch, an attorney at AAA, and asked whether any *ex parte* communications had taken place between Arbitrator Cheng and O'Day or any other Bloomingdale's representative. *Id.* ¶ 16. Plaintiff alleges that Frisch "evaded the direct question," gave "wishy-washy answers," and declined to investigate further. *Id.* ¶¶ 16–17. And when Plaintiff requested permission to speak directly with Arbitrator Cheng—presumably about her suspicion of *ex parte* communications—Frisch rebuffed the request. *Id.* ¶ 17.

After Defendants moved to dismiss Plaintiff's Complaint, the Court granted leave for her to amend. *See* Dkt. 30 (July 14, 2025 Order). On August 6, 2025, Plaintiff emailed Defendants'

counsel an Amended Complaint, which Defendants then filed and the Court accepted as the operative pleading. *See* Dkt. 36 (Sept. 23, 2025 Order).

Plaintiff asserts numerous claims against both Defendants based on the same underlying theory: that Arbitrator Cheng and O'Day engaged in collusive *ex parte* communications that "deprived plaintiff of a fair hearing governed by a neutral arbitrator," Am. Compl. ¶ 27, and that AAA failed to prevent, and later refused to investigate, that alleged collusion, *id.* ¶¶ 34–39, 52–55. On that basis, Plaintiff asserts claims against both Defendants for breaching the implied covenant of good faith and fair dealing, *id.* ¶¶ 44–49, 50–56; *see also* ¶¶ 57–65, 91–94; against Bloomingdale's for negligent training and supervision of O'Day, *id.* ¶¶ 86–90; and against AAA for gross negligence, *id.* ¶¶ 66–73, false advertising in violation of N.Y. Gen. Bus. Law §§ 349 and 350-a, *id.* ¶¶ 74–79, and violation of the Due Process Clause of the Fourteenth Amendment, *id.* ¶¶ 80–85. All told, Plaintiff seeks more than $27 million in damages. *Id.* at 15.

## LEGAL STANDARD

To withstand a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action" that are "supported by mere conclusory statements, do not suffice." *Id.* In deciding a motion to dismiss, the Court "constru[es] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002), but it need not "accept as true a legal conclusion couched

as a factual allegation," *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Although a "court is ordinarily obligated to afford a special solicitude" to *pro se* litigants, "a lawyer representing himself ordinarily receives no such solicitude." *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010). While Plaintiff is proceeding *pro se*, she has informed the Court that she is a licensed attorney in the District of Columbia and signs all her pleadings "Esq[uire]." *See* Am. Compl. at 1. The Court therefore does not afford Plaintiff the special solicitude ordinarily owed to *pro se* litigants.

## DISCUSSION

Both Defendants have moved to dismiss the Amended Complaint in full. The Court addresses each Defendant's respective grounds for dismissal in turn.

### I. Bloomingdale's Motion to Dismiss

The Court begins with Bloomingdale's motion to dismiss. Plaintiff asserts three claims against Bloomingdale's: breach of the implied covenant of good faith and fair dealing (Count I), punitive damages based on that alleged breach (Count VIII), and negligent training and supervision (Count VII). Bloomingdale's moves to dismiss on two independent grounds: that the Amended Complaint fails to state a claim, and that, even if it did, Plaintiff's claims are barred by the doctrines of res judicata and collateral estoppel.[3] *See* Dkt. 32 (Bloomingdale's Br.) at 5–17. Assuming

[3] Bloomingdale's also suggests—albeit in passing—that Rule 11 sanctions are warranted upon dismissal of the Amended Complaint. *See* Dkt. 32 (Bloomingdale's Br.) at 8 n.5. But because a request for sanctions "must be made separately from any other motion," Fed. R. Civ. P. 11(c)(2), Bloomingdale's cursory reference does not suffice. Nor will the Court impose sanctions *sua sponte*. *See Kyros L. P.C. v. World Wrestling Ent., Inc.*, 78 F.4th 532, 543–44 (2d Cir. 2023) (noting that a *sua sponte* Rule 11 sanction requires a finding of "bad faith").

*arguendo* that Plaintiff has successfully stated a claim, the Court concludes that res judicata and collateral estoppel close the courthouse doors to her claims.

**A. Res Judicata**

Under the doctrine of res judicata, also known as claim preclusion, "a final judgment on the merits of an action precludes the parties . . . from relitigating issues that were or could have been raised in that action." *Simmons v. Trans Express Inc. (Simmons II)*, 16 F.4th 357, 360 (2d Cir. 2021). Claim preclusion therefore bars relitigation where (1) "the prior decision was a final judgment on the merits," (2) "the litigants were the same parties," (3) "the prior court was of competent jurisdiction," and (4) "the causes of action were the same." *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157 (2d Cir. 2017).

The Full Faith and Credit Act, 28 U.S.C. § 1738, requires a federal court to apply New York preclusion law to New York state court judgments. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *cf. Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (noting there is "no discernible difference between federal and New York law concerning res judicata and collateral estoppel"). New York employs a "transactional approach" to claim preclusion, under which the doctrine "extends beyond attempts to relitigate identical claims" to "all other claims arising out of the same transaction or series of transactions." *Simmons II*, 16 F.4th at 360 (emphasis omitted) (quoting *Simmons v. Trans Express Inc. (Simmons I)*, 170 N.E.3d 733, 736 (N.Y. 2021)). To determine whether claims arise from the same transaction, courts consider "whether the claims turn on facts that are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Simmons I*, 170 N.E.3d at 736.

This case readily satisfies that standard. Not only is the New York Supreme Court's judgment affirming the Final Award a final judgment on the merits, but Plaintiff and Bloomingdale's were the parties to that proceeding, as they are here. *See, e.g.*, *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984) ("[T]he confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court."). And Plaintiff does not dispute that the New York Supreme Court had jurisdiction over her petition. The only question, then, is whether the causes of action are the same. They are.

Plaintiff's Amended Complaint undoubtedly arises from the "same transaction" as her state-court petition to vacate the Final Award. After Arbitrator Cheng dismissed Plaintiff's claims, the New York State Supreme Court found no basis to disturb the Final Award, rejecting Plaintiff's contention that Arbitrator Cheng was partial and biased, and had denied her "an opportunity to present her case." *See* Supreme Court Order at 4. Now, Plaintiff alleges that Arbitrator Cheng "colluded" with Bloomingdale's "to deprive [her] of a fair hearing governed by a neutral arbitrator." Am. Compl. ¶ 27. Although repackaged in somewhat different language, both challenges rest on the same premise: that Arbitrator Cheng was not neutral and that Plaintiff was denied a fair hearing as a result.

Plaintiff all but concedes as much, acknowledging that the Amended Complaint alleges "the same course of wrongful conduct." Dkt. 37 (Pl.'s Bloomingdale's Opp'n) at 9. Undeterred by that admission, she nonetheless attempts to distinguish the two on the ground that "partiality" and "bias" differ in "degree." *Id.* But whatever the semantic distinction, it is of no consequence because it does not change the substance of her allegations. Both theories are anchored in the notion that Plaintiff was treated unfairly by Arbitrator Cheng in the arbitration. *Cf. In re Teltronics Servs., Inc.*, 762 F.2d 185, 193 (2d Cir. 1985) ("New legal theories do not amount to a new cause

of action so as to defeat the application of the principle of res judicata.”). In other words, Plaintiff's Amended Complaint turns on facts “related in time, space, origin, [and] motivation” to those underlying the state-court case and would “form a convenient trial unit,” because the same evidence bears on both. *See Simmons I*, 170 N.E.3d at 736.

Nor does it matter that, as Plaintiff asserts, the facts underlying her collusion allegation came to light only after the state-court proceedings ended. Even taking those conclusory allegations as true, “[a]s a general rule, newly discovered evidence does not preclude the application of *res judicata*.” *Saud v. Bank of N.Y.*, 929 F.2d 916, 920 (2d Cir. 1991). Exceptions to that rule exist where “the evidence was either fraudulently concealed or when it could not have been discovered with due diligence.” *Id.* However, “wholly conclusory allegations of fraudulent concealment are insufficient.” *Sitafalwalla v. Toyota Motor Sales, U.S.A., Inc.*, No. 15-CV-1807, 2016 WL 740441, at *10 (E.D.N.Y. Feb. 24, 2016) (citing *Saabirah El v. City of New York*, 300 F. App'x 103, 105 (2d Cir. 2008) (summary order)).

Yet that is all Plaintiff offers. The only concealment she describes is the bare-bones allegation that AAA “failed to investigate misconduct,” Am. Compl. ¶ 85, after she received the anonymous “tip” of the purported collusion, *id.* ¶ 16. Besides Plaintiff failing to present any evidence to substantiate that assertion, AAA's alleged conduct occurred nearly two years after the state-court proceedings, so it could not have prevented her from discovering such collusion during that time. *Compare id.* (reported tip to AAA in 2024), *with* Supreme Court Order at 1 (decided 2022). In the same vein, Plaintiff has failed to allege any facts suggesting that the “communications” between Arbitrator Cheng and O'Day could not have been uncovered while she litigated the issue in state court. To the contrary, Plaintiff had ample reason to inquire about bias or collusion before or during those proceedings. Indeed, her concerns about Arbitrator

Cheng's alleged bias and related conduct formed the very basis of her state-court challenge to the Final Award. Plaintiff cannot now recast her failure to pursue those concerns as Defendants' concealment of said concerns without any basis.

**B. Collateral Estoppel**

Collateral estoppel, or issue preclusion, is related to, but distinct from res judicata. Collateral estoppel prevents a party from relitigating an "*issue* clearly raised in a prior action or proceeding and decided against that party . . . whether or not the [] causes of actions are the same." *Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000) (emphasis in original). Under New York law, the doctrine only applies if the "issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair opportunity to litigate the issue in the earlier action." *City of New York v. Welsbach Elec. Corp.*, 878 N.E.2d 966, 968 (N.Y. 2007). The inquiry is not mechanical. Rather, courts ask "whether relitigation should be permitted . . . in light of what are often competing policy considerations, including fairness to the parties, conservation of the resources of the court and the litigants, and the societal interests in consistent and accurate results." *Simmons I*, 170 N.E.3d at 737.

Every element is met here. First, the issue of whether Arbitrator Cheng was biased—that is, not "neutral," *see* Am. Compl. ¶¶ 25–26, 43—was raised, fully litigated, and decided in state-court proceedings. Indeed, Plaintiff's petition to vacate the Final Award rested in part on her assertion that Arbitrator Cheng was not impartial, which the New York Supreme Court squarely rejected, concluding that there was "absolutely no evidence of bias against [Plaintiff]." Supreme Court Order at 5. Second, Plaintiff had more than a full and fair opportunity to litigate the issue. This was hardly a proceeding involving "trivial stakes" that "may not have been litigated vigorously," *Simmons I*, 170 N.E.3d at 737, as evidenced by the fact that Plaintiff pursued her

challenge through every level of the state judicial system—each leaving the Final Award undisturbed.

The policies underlying issue preclusion do not counsel a different result; if anything, they reinforce it. Preclusion rests on "considerations of judicial economy as well as fairness to the parties." *Reilly v. Reid*, 379 N.E.2d 172, 175 (N.Y. 1977). Allowing Plaintiff to relitigate the fairness of the arbitration would require the Court to revisit questions already decided and force Bloomingdale's to defend those questions twice over. Plaintiff challenged Arbitrator Cheng's alleged partiality before the New York Supreme Court and, after that challenge failed, she pressed the issue before the First Department but met the same result, only to have the Court of Appeals deny her leave to appeal. Given this history, Plaintiff has surely had her day in court—and more.

## II. AAA's Motion to Dismiss

As for AAA's motion to dismiss, it seeks dismissal of all five claims Plaintiff asserts against AAA: breach of the implied covenant of good faith and fair dealing (Count II), punitive damages based on that alleged breach (Count III), gross negligence (Count IV), false advertising under N.Y. Gen. Bus. Law §§ 349 and 350-a (Count V), and a violation of the Due Process Clause of the Fourteenth Amendment (Count VI). AAA contends, *inter alia*, that all of Plaintiff's claims are barred by the doctrine of arbitral immunity and that her due process claim independently fails as a matter of law.[4] The Court agrees.

[4] AAA also moved to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), asserting that diversity jurisdiction was lacking because Plaintiff was domiciled in New York at the time she filed the initial Complaint. *See Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 117–18 (2d Cir. 2014) ("Subject matter jurisdiction . . . based on 28 U.S.C. § 1332 . . . requires 'complete diversity,' *i.e.* all plaintiffs must be citizens of states diverse from those of all defendants."). In response to a Court order, Plaintiff submitted sworn declarations attesting that she was a Michigan citizen when she filed this action. *See* Dkts. 43–44. Defendants thereafter informed the Court that they "accept plaintiff's representations and factual disclosures" concerning her Michigan domicile and "agree that . . . subject matter jurisdiction has been established." Dkt. 47 (AAA Response); Dkt. 48 (Bloomingdale's Response). Although the parties cannot confer jurisdiction by consent, the Court agrees that Plaintiff's declarations establish by a "preponderance of the evidence" that she was domiciled in Michigan at the time this action commenced. *See Landau v. Eisenberg*, 922 F.3d 495, 497 (2d Cir. 2019) ("The party asserting subject

**A. Arbitral Immunity**

Absolute immunity is "justified and defined by the *functions* it protects and serves, not by the person to whom it attaches." *Forrester v. White*, 484 U.S. 219, 227 (1988) (emphasis in original). Accordingly, based on the "functional comparability" of the "arbitrator's role in a contractually agreed upon arbitration proceeding" to that of a judge, arbitrators are "absolutely immune from liability in damages for all acts within the scope of the arbitral process." *Austern v. Chi. Bd. Options Exch., Inc.*, 898 F.2d 882, 886 (2d Cir. 1990). Consistent with that functional approach, arbitral immunity extends naturally to "boards that sponsor arbitration," *id.* (quoting *Corey v. N.Y. Stock Exch.*, 691 F.2d 1205, 1211 (6th Cir. 1982)), when they perform "functions that are integrally related to the arbitral process," *id.*

Arbitral immunity reflects arbitrators' "need for independent judgment," free from "threat[s] of lawsuits . . . [from] dissatisfied litigants," which is "essential to protect the [arbitrator] from undue influence." *Id.* (quoting *Corey*, 691 F.2d at 1211). Accordingly, courts are "wary of claims which, regardless of their nominal title, effectively seek to challenge a decisional act made during the arbitration process," lest such claims simply become an end-run around arbitral immunity. *Glob. Gold Mining, LLC v. Robinson*, 533 F. Supp. 2d 442, 448 (S.D.N.Y. 2008).

Strip away the labels attached to Plaintiff's claims and what remains are challenges to the arbitration process itself—claims that arbitral immunity squarely forecloses. Consider, first, Plaintiff's claim that AAA breached the implied covenant of good faith and fair dealing. In New

matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists."). She established a "physical presence" in Michigan when she began living at her family's home in early 2025, and demonstrated an "intent to remain there indefinitely" by moving her mailing and work addresses to Michigan, obtaining a Michigan driver's license, and reclassifying her New York co-op as her secondary residence, thereby forgoing tax abatement. *Dos Santos v. Assurant, Inc.*, 625 F. Supp. 3d 121, 136 (S.D.N.Y. 2022) (citing *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989)). Given that neither Defendant is a citizen of Michigan, the Court is satisfied that complete diversity exists.

York, "all contracts imply a covenant of good faith and fair dealing in the course of performance." *Delville v. Firmenich Inc.*, 920 F. Supp. 2d 446, 471 (S.D.N.Y. 2013). The covenant is breached when a "party acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement." *Id.*

Plaintiff alleges that AAA did just that when it promised to investigate her concerns about Arbitrator Cheng's neutrality but never followed through. Am. Compl. ¶¶ 52–55. But the claim, however labeled, challenges AAA's handling of an objection to the arbitrator's neutrality, a function "integrally related to the arbitral process" and therefore shielded by arbitral immunity. AAA Rules at 22 (charging AAA with determining whether an arbitrator "should be disqualified" for partiality).[5] And even if AAA fell short of its obligations under those rules, "[i]mmunity applies even if the [arbitration] organization has violated its own rules." *Imbruce v. Am. Arb. Ass'n*, No. 15-CV-7508, 2016 WL 5339551, at *3 (S.D.N.Y. Sept. 23, 2016).

Plaintiff's remaining claims fare no better against the shield of arbitral immunity. Plaintiff also asserts that AAA was grossly negligent in failing to adopt safeguards against *ex parte* communications and to investigate her allegations of misconduct against Arbitrator Cheng. Am. Compl. ¶¶ 66–73. But this claim, too, reduces to a challenge to AAA's administration of arbitrator neutrality and, more broadly, to how it ensures the fairness of the arbitrations it administers, functions that again fall within the arbitral process. *See* AAA Rules at 16, 21–22 (authorizing AAA "to administer the arbitration" and requiring arbitrators to disclose to AAA any circumstance bearing on their impartiality).

[5] Because Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is shielded by arbitral immunity, so too is her claim for punitive damages premised on that breach. *See Buchanan ex rel.*, 521 F. Supp. 3d 348, 357 (S.D.N.Y. 2021) ("[A] demand or request for punitive damages is parasitic and possesses no viability absent its attachment to a substantive cause of action.").

Plaintiff's false advertising claim likewise rests on the notion that AAA's "Statement of Ethical Principles," which touts its commitment to the "embrace[] . . . of integrity" and "practice [of] the highest ethical standards," was misleading because AAA failed to respond to or investigate Plaintiff's concerns about improper *ex parte* communications. Am. Compl. ¶¶ 76–79. To be sure, advertising is not ordinarily an arbitral function. *See Hopper v. Am. Arb. Ass'n*, 708 F. App'x 373, 373 (9th Cir. 2017) (declining to apply arbitral immunity to false advertising claim premised on marketing "designed to sway individuals to choose AAA over its competitors"). But Plaintiff's claim is false advertising in name only. Her grievance has nothing to do with what AAA said and everything to do with what it did—or did not do. Its statements were "misleading," in her view, only because of how AAA handled her arbitration. Said differently, deciding whether those statements were misleading would require the Court to scrutinize AAA's administration of her arbitration, the very inquiry arbitral immunity forecloses. That is precisely why courts look past a claim's "nominal title" when it "effectively seek[s] to challenge a decisional act made during the arbitration process." *Glob. Gold Mining*, 533 F. Supp. 2d at 448. And here, Plaintiff has simply dressed the same underlying grievance in yet another fashion.

Plaintiff's only rebuttal appears to be that "public policy pierces . . . immunity," Dkt. 38 (Pl.'s AAA Opp'n) at 6, but that assertion does little to lessen the force of the reasoning above. In her view, by failing to investigate, and thereby condoning, the alleged collusion, AAA acted outside "the scope of [its] arbitral functions" and forfeited its immunity. *Id.* at 7. But nearly all the cases on which she relies address whether *ex parte* communications warrant vacatur of an arbitral award, not whether they deprive the arbitrator, much less the sponsoring organization, of immunity from suit. *See, e.g.*, *Goldfinger v. Lisker*, 500 N.E.2d 857, 860–61 (N.Y. 1986) (vacating award where arbitrator privately communicated with one party); *Paluch v. Kohn*, 165 N.Y.S.3d

601, 603–04 (N.Y. App. Div. 2022) (affirming vacatur where arbitrator admittedly relied on information received *ex parte* from one party). If anything, those cases only confirm that the proper remedy for such misconduct is vacatur, a remedy Plaintiff pursued in state court, to no avail.

Plaintiff's reliance on *Schorr v. American Arbitration Ass'n*, No. 21-CV-5569, 2022 WL 17965413 (S.D.N.Y. Dec. 27, 2022), is similarly misplaced. There, AAA terminated an arbitration midstream, before any decision on the merits, after one party repeatedly threatened and harassed the arbitrator and AAA staff. *Id.* at *5–6. Before ultimately dismissing the case on other grounds, the court declined to apply arbitral immunity because the claimant was left without a decision or recourse for the fees she had advanced, reasoning that she was not "seeking to unsettle a completed arbitration" and that immunizing AAA's abandonment of the proceeding would reward the disruptive party and undermine effective arbitration. *Id.* at *12. But *Schorr* does not stand for the proposition, as Plaintiff suggests, that a party who pays for arbitration may sue whenever they believe it falls short. *See* Pl.'s AAA Opp'n at 7–8. At most, it recognizes that immunity may not shield AAA's refusal to perform the arbitral services it was paid to provide, while simultaneously making clear that immunity does apply where "arbitral losers" use "administrative decisions as a vehicle to attack, indirectly, the outcomes of completed arbitrations." *Schorr*, 2022 WL 17965413 at *12. Plaintiff's claim is precisely such an indirect attack.

**B. Due Process Claim**

Lastly, Plaintiff's claim that AAA's failure to develop "sufficient safeguards" to remedy and investigate the alleged misconduct violates the Due Process Clause of the Fourteenth Amendment is equally unpersuasive. *See* Am. Compl. ¶¶ 82–84. The Due Process Clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. It is axiomatic that the Fourteenth Amendment "appl[ies]

only to state actors." *Leeds v. Meltz*, 85 F.3d 51, 54 (2d Cir. 1996). A private actor may be treated as a state actor if its conduct is "fairly attributable to the [s]tate." *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982).

Nothing in Plaintiff's allegations transforms AAA's private conduct into the state action necessary to sustain her claim. Private contractual arbitration does not constitute state action. *See Fed. Deposit Ins. Corp. v. Air Fla. Sys., Inc.*, 822 F.2d 833, 842 n.9 (9th Cir. 1987) ("[T]he arbitration involved here was private, not state, action . . . [therefore] we do not find in private arbitration proceedings the state action requisite for a constitutional due process claim."). Courts within this District have also repeatedly recognized that arbitrators and the organizations that administer arbitrations are private actors whose conduct is not subject to the Due Process Clause, *see, e.g.*, *Yonir Techs., Inc. v. Duration Sys. (1992) Ltd.*, 244 F. Supp. 2d 195, 208 (S.D.N.Y. 2002) ("AAA . . . [is a] private actor[], . . . not subject to the Due Process Clause."); *Weinraub v. Glen Rauch Secs., Inc.*, 399 F. Supp. 2d 454, 463 (S.D.N.Y. 2005), *aff'd*, 180 F. App'x 233 (2d Cir. 2006). AAA is no exception, and Plaintiff's due process claim therefore fails.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss the Amended Complaint are GRANTED, and the Amended Complaint is dismissed in its entirety.[6] Accordingly, the Clerk of Court is respectfully directed to terminate the motions, close this case, and mail a copy of this Opinion & Order to Plaintiff.

SO ORDERED.

Dated: September 30, 2026
New York, New York

Hon. Ronnie Abrams
United States District Judge

[6] In light of the Court's rulings set forth above, it need not reach Defendants' remaining arguments.